Goodwin *v.* Appleton.

JEREMIAH GOODWIN *versus* JAMES APPLETON.

It was held that the printed volume of Massachusetts Revised Statutes which went into effect on May 1, 1836, wherein was found a reference to a prior statute, as Stat. 1824, c. 130, and a repeal of Stat. c. 130, describing it as " an act to allow grace on bills of exchange and notes, according to the custom of merchants," was competent and sufficient evidence from which a jury might infer, that by the laws of Massachusetts, grace was allowed on promissory notes, on Feb. 6, 1836.

It is not competent for the *defendant*, under the provisions of Rev. Stat. c. 69, § 3, to testify to any facts, but such as go to establish the defence of usury.

The verdict of a jury is not valid and final until pronounced and recorded in open Court.

If the jury return a verdict into Court, which is not such as the issue requires, the Court may send them back to reconsider their verdict, with appropriate instructions, at any time before it is received and recorded as a verdict.

Courts take notice of the local divisions of the State into counties, cities, and towns; but they are not bound to take judicial notice of the local situation and distances of places in counties from each other.

Assumpsit against Appleton as indorser of a promissory note, dated Feb. 6, 1836, for $3750, and payable in one year

with interest to Selden Huntington, or order, signed by Henry A. Breed of Lynn in Massachusetts, and indorsed by Huntington and by the defendant. With the general issue, there was a brief statement, signed and sworn to by the defendant, setting forth specially certain facts, and averring that he had sold and indorsed the note, and that the plaintiff took $467, as usury on the indorsement and sale of the note to him. The demand was made on Feb. 9, 1837, and the notice given on the tenth day of Feb. 1837, at half past nine of the clock in the forenoon; and to show that the payer was entitled to grace, the plaintiff introduced in evidence the volume entitled the Revised Statutes of Massachusetts, which went into operation after April 30, 1836. The writ bore date Feb. 9, 1837, and it was in evidence that it was made in the County of York, but the time when did not appear. The return of the officer on the writ, was made at Portland in the County of Cumberland, on the ninth of the same Feb. at half past ten in the forenoon. There was no testimony in the case showing the distance of Portland from Alfred. To prove usury in the negotiation of the note, his counsel offered the defendant, as a witness. He was objected to by the plaintiff, but admitted, and testified, that about a month after the date of the note, he passed the note to the plaintiff and received for it thirty-three hundred dollars, and indorsed the note to the plaintiff; that he made no minute at the time of this transaction, of the amount received by him, but that from a calculation made by him in Sept. 1841, he has now no doubt that $3300, was the true sum received by him of Goodwin for the note; that at the same time he let Goodwin have another note for $1250, and received for it $1100, that this last note had then but a short time to run; that he received for both notes $4400, that this sum was paid in cash, except about $900, for which he took the plaintiff's note payable in 60 days with interest; that he was at that time holden on Huntington's paper, which was over due, and was pressed for payment, and that Huntington gave him those notes and authorized him to turn them into money to relieve his liabilities; and that he was interested in

the notes, for he was interested in the result, being then liable for Huntington as indorser, and pressed for payment. The defendant also introduced evidence tending to show, that by a bargain with the plaintiff, he was entitled to have the avails of certain logs deducted.

The counsel for the defendant contended :

1. That the action could not be maintained, because it was commenced before the plaintiff's cause of action, if any, accrued.

2. That the demand of payment of the maker of the note was not seasonably made, as there was no legal evidence that the note was payable with grace by the laws of Massachusetts.

3. That the facts testified to by the defendant, and which were not contradicted by the plaintiff's oath, sustained the defence of usury, so far as to have the deduction made according to the provisions of the statute.

SHEPLEY J. before whom the trial was, instructed the jury upon the first point, that it was for them to find whether the writ was made before half past nine o'clock on the day it was dated, that if it was so made by the attorney and passed out of the hands of the plaintiff and his attorney, as a complete and valid writ, the action was brought too soon.

Upon the second point, the jury were instructed, that a demand of payment on the 9th of February was seasonably made by the laws of Massachusetts, and a notice to the defendant as indorser put into the post office in season to go by the first mail was in season.

Upon the third point the jury was instructed, that the deduction from the note when it was transferred to the plaintiff of the sum of $467, if proved to be usurious, was to be allowed to the defendant and taken from the note, if they found for the plaintiff. That the negotiation between indorser and indorsee may be usurious, or it may be a sale of the note ; that if a sale only it is not usurious, but if the transaction was a loan by which it was intended to secure more than six per cent. interest, it was usury, although taking the form of a sale. That the facts testified to by the defendant, as to this

transaction upon their face, unless disguised to cover up a loan for usury, do not make it usurious, and if they were satisfied that there was no usury, under the above instructions, then the testimony of the defendant was to be laid out of the case.

The jury returned into Court with a verdict for the defendant, and that the plaintiff owed the defendant the sum of $2242,72. The Judge remarked to them, that their verdict was inconsistent and that the defendant had no claim against the plaintiff, and did not claim to recover against him, and again instructed them, that if they found for the plaintiff, the defendant's claim for an allowance under the contract at Norridgewock, for which he contended, should be allowed to the defendant, by deducting it from the note in suit; and if they found for the defendant, their verdict should be, that he never promised, and nothing more; and the jury were directed to retire again and consult further on the case. The jury did retire and afterwards returned into court with a verdict for the plaintiff for $3252,70 damages. The paper, first presented by the jury, stated that the defendant did not promise, and that the plaintiff was indebted to the defendant in the sum of $2242,72.

To the instructions of the Judge, upon the points above stated, and to his directions to them, on their returning their first verdict into court, to retire and consult further, the defendant excepted.

*N. D. Appleton* and *Howard* argued for the defendant. In support of their views, they cited on the first point, that the action was prematurely brought, 1 Greenl. Ev. 8; 1 Strange, 469; 10 Pick. 45.

On the second point, that there was no sufficient evidence, that grace was allowed by the laws of Massachusetts, they contended that the laws in existence in that State when the contract was made must govern, which was before their Revised Statutes took effect. The volume of Revised Statutes was no evidence of what the law was prior to that time.

On the point that the contract was usurious, they cited 4 Mass. R. 156; 12 Pick. 565; 3 Pick. 185; 15 Mass. R. 460; 10 Mass. R. 502; 1 Greenl. 167; 2 Camp. 599; 8 Mass. R.

257; 2 Pick. 145; Dougl. 736; 7 Wend. 569; 1 Stark. R. 385; 21 Wend. 285; 24 Wend. 230. And even if the contract was not usurious, the plaintiff can recover no more than he paid, with interest. 3 Shepl. 166; 15 Johns. R. 44; 7 Wend. 569; Chitty on Con. (8th Ed.) note (a).

On the point, that the course taken by the Judge, when the jury came in was erroneous, they cited 2 Saund. 252; 11 Mod. 64.

*Bradley* argued for the plaintiff.

There is no evidence in the case as to the distance from Alfred to Portland, and the Court cannot, *ex officio*, take notice of it. And the law will presume that the writ was made at any time before service. 15 Mass. R. 364; 2 Pick. 128.

The note was dated at Lynn, and the contract is to be governed by the laws of Massachusetts. 1 Pet. 25. What the laws were is to be proved as matter of fact, and the evidence offered was admissible. 3 Pick. 293; 9 Pick. 130. Without any statute, grace is allowed on negotiable promissory notes. Bayley on Bills, 256.

The defendant could testify to no facts, but such as are set forth in the brief statement. He there says, that he indorsed and sold the note to the plaintiff, and he would not be competent to testify to other facts inconsistent with it. Nor can the defendant himself testify to any facts other than such as go to prove that the contract was usurious. The sale of the note for less than its face did not constitute usury. *French* v. *Grindle*, 3 Shepl. 163; *Lane* v. *Steward*, 2 Appl. 104.

The course of the Judge was entirely correct in sending the jury out, after bringing in the first paper. The statement brought in varied wholly from the issue they were to try, and was not a verdict on which a judgment could be legally rendered. 2 Wheat. 221.

The opinion of the Court was afterwards drawn up by

TENNEY J. — We are satisfied, that in Massachusetts where the note in suit was given, three days of grace was allowed upon all negotiable paper from the year 1824, when the statute,

chap. 130, on that subject was enacted. But it is insisted for the defendant, that there was no competent evidence of this introduced at the trial. In the margin of chap. 33, § 5, of the Revised Statutes of that Commonwealth, which was introduced as evidence, the statute of 1824, chap. 130, is referred to, and in the act to repeal the acts, which had been revised, page 828, there is under the year 1824, the repeal of chap. 130, being stated to be "an act to allow grace on bills of exchange and notes according to the custom of merchants." By the same Revised Statutes the new statutes and the repeal of the old were to take effect simultaneously. We think there was sufficient to authorize the instruction to the jury in this respect.

To establish usury, the oath of the defendant under certain circumstances is allowed. Chap. 69, § 3, Rev. Stat. This statute is a change of the common law, which denies to a party in a suit, the right to be heard as a witness, and must be construed strictly. It cannot however on the most liberal construction extend beyond that object. If the testimony of the defendant fails to establish the fact, for which it is allowed, it must be disregarded. It could not have been the intention of the Legislature, under a plea of usury to permit facts, coming from a party, tending to prove another issue, to have any influence upon the jury. When by the statute, a party may be introduced for this special purpose, on no principle can his testimony affect the case for another which is totally distinct.

The course taken by the Judge, when the jury returned with their first verdict, was proper. The finding was not such as the issue required ; it not having been received and *recorded*, it was no verdict, and the jury had a right to alter it. *Root v. Sherwood*, 6 Johns R. 68. Before a verdict is recorded, the jury may vary from their first offer of their verdict, and the verdict which is recorded, shall stand. The verdict is not regarded as valid and final, until it is pronounced and recorded in open Court. The Court may also of its own accord send the jury back to reconsider their verdict, if it appears to be a

mistaken one, and before it is received and recorded. *Black-ley* v. *Sheldon,* 7 Johns. R. 32.

From the sum returned in the verdict as damages, and the evidence as reported we infer, that the jury did not find the contract declared on affected by any usurious taint. The jury have also passed upon the question, at what time the writ in this case was made, and found that it was not too soon according to the instruction of the Judge on that point, to which there is no exception taken. Courts take notice of the local divisions of the State, as into counties, cities, towns, &c. and of the relative position thereof, but not of the precise boundaries and distances. Greenl. Ev. 8. And they are not bound to take judicial notice of the local situation and distances of the different places in counties from each other. 4 B. & Ald. 243. The writ, which was made in Alfred, was in the hands of an officer of the county of Cumberland in one hour after it could have been a valid writ. But what was the distance between the place where the writ was purchased and that where the attachment was made, or the mode adopted to transmit the writ to the officer, does not appear. We do not think that the verdict is so manifestly against evidence on either of these accounts as to justify us in disturbing it.

The amount of the note in suit would depend upon mere calculation upon precise and well known rules. If usury was not proved, the deductions to be made from this amount would be the result of testimony, concerning which there was no controversy. It is evident, that there was an error in computation, in making up the damages, which should be corrected. And the verdict is to be set aside, and the action to stand for trial, unless the plaintiffs shall cause a remittitur of $633,69, to be entered of record, which his counsel have offered to do; in which case, exceptions and motion overruled.