## CHARLES P. KELLOGG ET AL.

### v.

## JAMES H. TURPIE.

|  2 |  55 |
|----|-----|
| 93 | ²354 |

|  2 |  55 |
|------|-----|
| 195s | 348 |

1. PRACTICE—FAILURE TO PRESERVE OBJECTIONS BY EXCEPTION.— Where there is no bill of exceptions in the record preserving the motion to quash an attachment, the action of the court thereon, and exception to such action, the Appellate Court will not consider the error assigned.

2. CONTRACT—OBTAINING GOODS BY FRAUD.—Where goods are obtained upon credit by means of false and fraudulent representations of the purchaser's ability to pay, the seller may rescind the contract of sale *in toto*, and bring trover or replevin for the goods before the time of credit has expired.

3. WAIVER OF TORT AN AFFIRMANCE OF THE CONTRACT—ASSUMPSIT.— Bringing assumpsit for the price of the goods sold is a waiver of the tort, and an affirmance of the contract of sale, and in such case the action is premature if brought before the expiration of the time of credit.

4. WHEN ASSUMPSIT MAY BE MAINTAINED.—When goods have been tortiously obtained, in order that assumpsit will lie, it is essential that the wrong doer should have sold the goods, or in some way converted them into money or money's worth.

APPEAL from the Circuit Court of Kankakee county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. STEPHEN R. MOORE, for appellants, argued that where goods have been wrongfully obtained, the seller may waive the tort and sue upon an implied contract, as for goods sold and delivered, and cited Abbott et al. v. Barry, 6 C. L. Rep. 186; Wilson v. Force, 6 Johns. 110; Hill v. Davis, 3 N. H. 384; 1 Comyn on Contracts, 38; 3 Phillips on Ev. § 404; 1 Esp. Cas. 430; 2 Esp. Cas. 522.

When the vendees have been guilty of fraud in the purchase of goods upon credit, the vendor, without waiting until the time of credit has expired, may reclaim the goods, or he may waive the tort and recover in assumpsit for their value. Young v. Marshall, 8 Bing. 43; Hill v. Perrott, 3 Taunt. 274; Lightly v. Clouston, 1 Taunt. 113; Kayser v. Sickel, 35 Barb. 88; Harpending v. Shoemaker, 37 Barb. 271; Roth et al. v. Palmer, 27 Barb. 652; Toby et al. v. Palmer, 27 Barb.

Kellogg et al. v. Turpie.

The plaintiff may elect to sue in assumpsit rather than tort, and in making such election he does not thereby adopt the express contract, but relies upon the implied contract arising from delivery and possession by the defendant of the goods. He may sue for goods sold and delivered, leaving the transaction to be proven on the trial: Putnam v. Wise, 1 Hill, 234; Cummings v. Vorce, 3 Hill, 273; Berly v. Taylor, 5 Hill, 577; Brownell v. Flogler, 5 Hill, 282; Baker v. Dobbins, 2 Denio, 136; Osborn v. Bell, 5 Denio, 370; Camp v. Pulver, 5 Barb. 91; Hinds v. Twiddle, 7 How. 278; Butts v. Collins, 13 Wend. 154; Chancey v. Yeaton, 1 N. H. 151; Hill v. Davis, 3 N. H. 384; Stockett v. Watkins, 2 Gill. & J. 326; Ford v. Caldwell, 3 Hill, 248; Floyd v. Wiley, 1 Mo. 430; Mitchell et al. v. Bettman, 25 Barb. 409; Pierce v. Drake, 15 Johns, 475; M. & M. Bank v. Gore et al. 15 Mass. 75; Burton v. Driggs, 20 Wall. 225; Jones v. Baird, 7 Jones (N. C.); Haggerty v. Palmer, 6 Johns. Ch. 437; Keiler v. Field, 1 Page, 312; Morris v. Rexford, 18 N. Y. 553; Marsh v. Keating, 1 Bing. 198; Corliss v. Gardner, 2 Hall, 345.

Mr. JAMES N. ORR, for appellee; contending that the vendor cannot sue for the price of the goods before the period of credit has expired, but must sue in tort for the value, and that by declaring for the price he affirms the contract, cited Gray v. St. John, 35 Ill. 222; Chitty on Contracts, 363; 2 Greenleaf on Ev. § 104; Dellow et al. v. Hull, 5 Reporter, 14; Knott v. Smith, 1 C. M. & R. 312; Ferguson v. Carrington, 9 B. & C. 59; Piscataqua Bank v. Loudy, 3 Miles (N. Y.) 312.

PILLSBURY, J.   On the 20th of December, A. D. 1875, and in January and February, 1876, the defendant purchased bills of goods of the plaintiffs, on a credit of four months.   March 1st, 1876, the plaintiffs commenced their suit by original attachment, and filed the common counts in assumpsit as their declaration in the cause.

Subsequently such proceedings were had under leave ·of court to amend affidavit for attachment, and the declaration, that on December 5th, 1877, the plaintiffs filed the following declaration, omitting the formal parts:

Kellogg et al. v. Turpie.

"For that, whereas, heretofore, to-wit: On the 20th day of December, 1875, and for a long time previous thereto, and all the time since, were, and have been under their said firm name, carrying on business at Chicago, in said State, as merchants, selling at wholesale, goods and merchandise, and that heretofore, to-wit: on the 20th day of December, 1875, the said defendant came to the place of business of said plaintiffs, in said Chicago, and represented to said plaintiffs that he, said defendant, was engaged in the business of selling goods and merchandise at, to-wit: said Kankakee county, and requested said plaintiffs to sell him, said defendant, goods, wares and merchandise, from time to time, on credit, and to induce said plaintiffs to sell said defendant goods, wares and merchandise, on credit. Said defendant then and there stated and represented to said plaintiffs that he, said defendant, and his brother, William Turpie, jointly owned six hundred and forty acres of land, situated in said Kankakee county, worth the sum of ninety-six hundred dollars. That the said defendant was the owner of a large amount of lands in the States of Indiana, Kansas and Arkansas, of great value; and that he, said defendant, owned lands in White county, in the State of Indiana, of the value of seven thousand dollars; and that he, said defendant, was worth the sum of twelve thousand dollars, over and above all his liabilities and indebtedness; and said plaintiff, relying upon said statements and representations, and believing them to be true, did thereafter, to wit: on the 20th day of December, A. D. 1875; and to wit: on the 7th day of January, 1876; and to wit: on the 18th day of February, A. D. 1876, at Chicago, at the request of the said defendant, sell to said defendant divers goods, wares and merchandise, at the price in the aggregate of a large sum of money, to wit: the sum of eleven hundred and twenty-four dollars and thirty-five cents, and of the value, to wit: of the sum of money last aforesaid, on a credit of four months from the date of the several sales of goods, wares and merchandise, for the price of the goods at said several times respectively sold. And at said several times then and there delivered said goods, wares and merchandise to said defendant, and he appropriated said goods to

his own use. And the plaintiffs aver that all and singular these said representations of the said defendant, and his said statement as to his ownership of land, and of his being worth the sum of twelve thousand dollars over and above all his indebtedness and liabilities, were, all and singular, false, and made with the intent to deceive said plaintiffs. As they aver, that said defendant at the time he made said representations and statements, was totally insolvent; all of which said defendant then and there well knew. And said plaintiffs aver, that the only inducement for them to sell goods, wares and merchandise to said defendant, on said credit, was the belief on their part that said representations of said defendant were true, without which they would not have sold said goods, wares and merchandise, to said defendant, on said credit; and said plaintiffs further aver, they first learned said representations and statements of said defendant, as to said ownership of land, and said statements that he was worth the sum of $12,000 over and above all his liabilities and indebtedness, were false, and that said defendant was insolvent, as aforesaid, on, to-wit: the last day of February, A. D. 1876, and that as soon as they learned said representations and statements, so, as aforesaid, made by said defendant were false, they rescinded said contract of sale of said goods, wares and merchandise, so made as aforesaid, on credit, and demanded pay thereof, immediately, namely, the said value of said goods, at the time they were sold and delivered as aforesaid.

And so plaintiffs say that by reason of the premises, said defendant is indebted to said plaintiffs in a large sum of money, to-wit, said sum of $1,124.75, the reasonable worth and value of said goods, wares and merchandise, at the time they were sold and delivered to said defendant, as aforesaid. And the said plaintiffs aver that said goods, wares and merchandise, at the time of the sale and delivery thereof, were reasonably worth said last sum of money, to-wit: at Chicago, to-wit: at said county of Kankakee, whereof the said defendant, to-wit: on the day and year last aforesaid had notice, yet the said defendant though often requested, has not paid, etc."

Kellogg et al. v. Turpie.

The affidavit for the attachment is in substance the same as the declaration.

The Circuit Court quashed the writ of attachment, and sustained a demurrer to the declaration, and the plaintiffs abiding by their declaration, a judgment for costs was rendered in favor of the defendant.

The plaintiffs bring the case to this court by appeal, assigning the following errors:

First. "The court erred in sustaining the demurrer to the special count of the declaration."

Second. "The court erred in dismissing the suit and quashing the affidavit for attachment."

There is no bill of exceptions in the record preserving the motion to quash attachment, the action of the court thereon, and the exception to such action, hence we cannot consider the second error assigned.

This, however, is unimportant, as the same legal question arises upon the allegations of the declaration. It will be noticed that by the error first assigned, the only action of the court questioned is in sustaining the demurrer to the *special* count of the declaration.

This is in accordance with the agreement of counsel to waive, abstract, and submit the cause upon the statement contained in plaintiff's brief, and counsel for appellants fairly states the point arising in the cause when he says: "The only question I shall discuss is, will the action of assumpsit lie upon the facts stated in the affidavit and declaration?

"I admit that the goods were sold upon a credit of four months, and before the expiration of the time this suit was commenced."

What is the effect, then, upon the contract, of bringing assumpsit for the price or value of the goods sold under the circumstances alleged in the declaration?

The following propositions are undoubted law in this State: First. That where goods have been obtained tortiously, in order that assumpsit can be maintained, it is essential that the wrong doer should have sold the goods, or in some way converted them into money or money's worth. Creel v. Kirkam, 47 Ill. 344; Johnston et al. v. Salisbury, 61 Ill. 316.

Second. That where a party rescinds a contract on the ground of fraud, such rescission must be total; a portion of the contract cannot be affirmed and a portion repudiated. Bowen v. Shuler, 41 Ill. 193; Ryan v. Bryant, 42 Ill. 78; King v. Mason, 42 Ill. 223.

While this last proposition is admitted by counsel for the appellants, it is most earnestly insisted by him in his very able brief, that where a party obtains goods upon credit by special contract which is based upon fraud, the special contract can be repudiated, and an action of assumpsit immediately sustained to recover the value of the goods; and he cites many authorities, which it is claimed sustain such doctrine. Not being advised that the point herein involved has ever been before our Supreme Court and there adjudicated, we have as fully and carefully examined all the authorities cited, and others brought to our attention in the examination, as our time and facilities would permit, and shall content ourselves with drawing largely upon them for this opinion, rather than stating merely our conclusions from them.

Mr. Benjamin, in his work on Sales, page 342, referring to this subject, says: " This contract is voidable at the election of the vendor, not void *ab initio*.

" It follows, therefore, that the vendor may affirm and enforce it, or may rescind it. He may sue in assumpsit for the price, and this affirms the contract, or he may sue in trover for the goods or their value, and this disaffirms it."

" But in such cases," says Mr. Chitty, in his work on Contracts, " the vendor must either affirm or disaffirm the transaction as a whole, and therefore, where goods are fraudulently procured to be sold on credit, the vendor cannot sue for the price before the credit has expired; but he must sue in *tort* for the value of the goods, for, by declaring for the price, he affirms the contract; and where there is an express contract between the parties, the law will not imply any other."

To the same effect is Story on Sales, Section 446:

" Where goods have been obtained through the fraud or misrepresentation of the vendee, the vendor may either affirm the sale or rescind it and reclaim the goods. If he elect to

rescind he must, as we have seen, do so within a reasonable time, and must take care to do nothing affirmatory of the contract, or his right to rescind will be lost. And, in such case, he should sue in *trover* or *replevin* for the goods, treating the whole contract as utterly nullified by the fraud, and he should be careful not to bring assumpsit, since, as the foundation of this action is the promise of the vendee, the contract is thereby directly affirmed, and his rights will depend upon the contract solely."

In Smith v. Hodson, 4 D. & E., decided in 1791, in Court of King's Bench, the plaintiff, as assignee in bankruptcy of Lewis and Potter, brought assumpsit against the defendant for goods sold and delivered by the bankrupts to the defendant, who was one of the creditors of the firm. The sale was claimed by the assignee to be fraudulent, and the question was whether in such suit the defendant could set off his claim against the bankrupt. Lord Kenyon, in delivering the judgment of the court, said: "It is expressly stated in the case that the goods in question were delivered by the bankrupts to the defendant with a view to defraud the rest of their creditors; and therefore an action might have been framed to disaffirm the contract, which was thus tinctured with fraud; for if the assignees had brought an action of trover, they might have recovered the value of the goods.   *   *   *   But· this is an action on the contract for the goods sold by the bankrupt, and although the assignees may either affirm or disaffirm the contract, yet if they do affirm it they must act consistently throughout. They cannot, as has often been observed in cases of this kind, blow hot and cold.   *   *   *   *   *   * Therefore, on the distinction between the actions of trover and assumpsit, we are all of the opinion that a nonsuit must be entered."

The case of Ferguson v. Carrington, 9 B. & C. 58, 17 E. C. L. 37, is identical with the case at bar.

Lord TENTERDEN, before whom the cause was tried, was of the opinion that if the defendant obtained the goods with a preconceived design of not paying for them, no property passed to him by the contract of sale, and that it was competent for

the plaintiffs to have brought trover, and to have treated the contract as a nullity, and to have considered the defendant not as a purchaser of the goods, but as a person who had tortiously got possession of them, but that the plaintiffs by bringing assumpsit had affirmed that at the time of action brought there was a contract existing between them and the defendant. The only contract proved was a sale of goods upon credit. The time of credit had not expired and the action consequently was brought too soon.

Upon motion for a new trial, it was urged, as in this case, that the credit having been obtained by fraud, the plaintiff might sue before the credit expired.

The court held, by BAILEY J., "The plaintiffs have affirmed the contract by bringing this action. The contract proved was a sale on credit, and where there is an express contract, the law will not imply one.

By LITTLEDALE, J., "At the time when their action was brought, the defendant was not bound by the contract between him and the plaintiffs, to pay for the goods. The plaintiffs claim to recover for breach of contract." By PARKE, J., "As long as the contract existed, the plaintiffs were bound to sue on that contract. They might have treated that contract void on the ground of fraud, and brought trover. By bringing this action, they affirm the contract made between them and the defendant."

In the subsequent case of Strutt and others v. Smith, 1 C. M. & R. 311, the goods were sold upon the following terms: 7½ per cent. discount, bill at three months, ten per cent. discount, cash in fourteen days. The plaintiffs contending that they were induced to sell the goods by the fraud of the defendant, within fourteen days, held the defendant to bail and declared the goods sold.

PARK B. delivered the opinion of the court holding that: "It is clear that the plaintiffs cannot avail themselves of the defendant's fraud, so as to rescind the contract, and substitute a new contract of sale on different terms. They might possibly, on the evidence, have maintained trover, on the ground that fraud vitiated the contract; but if they treat the transaction

Kellogg et al. v. Turpie.

as a contract at all, they must take the contract altogether and be bound by the specified terms. That was rightly decided in Ferguson v. Carrington. * * * * * He was not bound within the fourteen days to pay upon request."

To the same effect are the cases of Read v. Hutchinson, 3 Camp. 352, and Bennett v. Francis, 2 Bos. & Pull. 550. In Selway v. Fogg, 5 M. & W., which was assumpsit for work and labor, the plaintiff gave evidence that the work was done which consisted in casting away rubbish, and that the value was 20*l.*

The defendant then gave evidence of a contract to do the work for 15*l.*, which sum he paid.

The plaintiff insisted that that contract was obtained by fraudulent misrepresentation as to the depth of the rubbish carted away, and that being founded in fraud it was no answer to the action. A verdict went for plaintiff for 5*l.*, with leave to defendant to enter a rule for non-suit. Such rule being obtained, the question was argued in the Exchequer, and the opinion of the court announced by Lord Abinger.

" I am of opinion," he said, " that this rule ought to be made absolute. At the trial, I was impressed with the opinion, and still remain so, that the plaintiff cannot recover, and I think so on two grounds: First, because no one can be liable upon a contract which he never made, nor intended to make. The very idea of a contract being that it is an agreement entered into by two willing parties, acting with their eyes open. A party cannot be bound by an implied contract where he has made a specific contract, which is avoided by fraud. A person is not at liberty to say ' I have made two contracts, and if one of them is avoided by its fraud, then I will set up the other.' But if he repudiate that contract on the ground of fraud, as he may do, he has a remedy by action of deceit."

The second ground is not material to our inquiry.

Delone v. Hull, decided June 15, 1877, by the Court of Appeals of Maryland, referred to in " The Reporter" of January, 1878, was attachment to recover a sum of money alleged to be due for goods sold and delivered.

The goods were sold upon a credit of ninety days, and before the expiration of the credit, the action was brought,

and the question there was the same as in the case at bar.

BARTOL, C. J., speaking for the court, says: "There is no doubt of the proposition that where goods are obtained by means of a fraudulent purchase, the vendor has a right to disaffirm the contract so as to re-vest the property in himself, and to recover its value in an action of tort against the vendee. Here the plaintiffs have not disaffirmed the contract, but have instituted their action upon it. In such case they must be bound by its terms, and cannot sue before the money becomes due. This is the principle of the common law, and there is nothing in the act of 1864 to alter this. The action was brought prematurely."

In Allen v. Ford, 19 Pick. 217, the same doctrine is announced: There it is said that: "If the plaintiff rescinds the contract, as he would have a right to do, the defendant failing to perform the condition of sale, his proper remedy for a conversion of the property is an action of trover, and he cannot waive the tort and recover the value of the goods in an action of assumpsit. In such a form of action the contract is admitted to exist at the time of the action brought, and where there is an express contract the law will not imply one."

The Supreme Court of South Carolina, in Whittack v. Heard, 3 Rich. 88, holds that where the contract of sale is repudiated trover is the proper remedy, and assumpsit will not lie for their value.

We have referred to the above authorities at such length, in order that it may be seen that the very point involved in this was before the court in those, and the better to enable us to understand the distinction between them and the several cases cited as containing the contrary view.

Hill v. Perrott, 3 Taunton, 274, was a case where the defendant and one Dacosta, by a swindling transaction, procured the plaintiffs to sell and deliver goods to Dacosta who was an insolvent person, and Dacosta gave in payment a bill indorsed by him, due at a future day. Dacosta immediately delivered the goods to the defendant. Upon discovery of the fraud, the plaintiffs repudiated the pretended sale to Dacosta, as well as the worthless bill, and sued the defendant.

Kellogg et al. v. Turpie.

The court held that the defendant was the principal, and could not set up the sale to the insolvent, as he had procured it by fraud, and should pay for the goods.

This might well be, for, while the defendant was the purchaser, no credit was extended to him, but, through his fraud, they had given credit to the insolvent, who was only the defendant's agent. That this was the principle of that case, see Selway v. Fogg, *supra*.

A case similar to the foregoing is that of Abbott's and another v. Barry, 6 E. C. L. 186; the action was for goods sold and delivered, and the money counts. It appeared that one Phillips, being indebted to defendant, for the purpose of discharging the debt, procured wines from the plaintiffs by a string of contrivances, which amounted to a gross fraud, paying the plaintiffs only half the price of the wines, and giving a bill which was of no value, for the residue.

In these contrivances, the defendant was prime mover and participator, and furnished Phillips the money with which to pay in part. The wines were then under the direction and brokerage of the defendant, sold in Phillips' name to Bunyan, who accepted a bill drawn by Phillips for the amount, which Phillips immediately indorsed to defendant.

The court very properly held that the defendant was one of the principals in the transaction, and that the profits of the sale was money in his hands, which he held to and for the use of plaintiffs ; as by the fraud, the property in the wines had not changed.

This decision is in harmony with all the authorities, that where the defendant has disposed of the goods and received the money therefor, the tort may be waived and assumpsit maintained for the money received.

So where the defendant has obtained by fraud money from the plaintiff to be repaid at a future day, upon discovery of the fraud the plaintiff can repudiate the contract; the effect of which is, that the defendant has money in his hands which in equity and good conscience he should at once return; hence, for so much money had and received, the action will lie in assumpsit. Such are the cases referred to of Hogan v. Shee, 2 Esp. 522,

and the Manufacturers' and Mechanics' Bank v. Gore, 15 Mass. 75.

Also, where the vendor has been induced by fraud to take something in payment for his goods, as the note or bill of some third party, payable in the future, which is worthless, he can treat the attempted payment as void, and sue at once for the price of the goods sold. Such is the case of Wilson v. Force, 6 Johns. 110. This is upon the ground that the goods have not been paid for as agreed. The distinction between the two classes of cases is clearly stated in a note to the case above referred to, in 15 Mass. page 75, as follows:

" Care must be taken to distinguish between cases where an agreement has been made for time, for the payment independently of the security given, and the common cases in which goods are sold, and a bill taken in payment, payable at a future day, without any express agreement for time for the payment of the goods. In the last mentioned case, if the bill be dishonored, the drawer may be sued immediately, upon the original cause of action, without any regard being had to the time the bill has to run; because there being no agreement as to time, the party takes the bill as payment, and therefore if it turn out to be good for nothing, the creditor has not received that which the other undertook to give him, and may therefore pursue his remedy immediately."

Keeping this distinction in view, it will not be difficult to harmonize nearly all the cases cited by the counsel for appellants with those referred to in former part of this opinion.

It is true, that in a cause tried before Eyre, C. J., in 1795, at *nisi prius*, he instructed the jury that if the defendant meant to impose upon or defraud the vendor of his goods, the defense that the credit had not expired would not avail him: DeSymons v. Minchwick, 1 Esp. 430. This is the only case in the English Courts that we have been able to find, where the exact point in the case at bar has been determined in favor of the position assumed by appellants.

All the other cases rest upon facts peculiar to themselves, which clearly distinguish them from Ferguson v. Carrington.

Kellogg et al. v. Turpie.

As in Stedman v. Goach, 1 Esp. 3, where the vendor was induced to take worthless notes of a third party *in payment* of his debt, or where the defendant by fraud, has procured the plaintiff to sell goods to an insolvent, and then get them into his own possession, as in Hill v. Perrott, and Abbots v. Barry, or where the defendant had fraudulently obtained money, then upon a rescission of the contract the money was recoverable as so much money had and received, as in Hogan v. Shee.

The case of DeSymons v. Minchwick *supra*, must be considered as overruled by the King's Bench in 1829, in Ferguson v. Carrington, and in the Exchequer, in 1834, by the case of Strutt v. Smith, and by Selway v. Fogg.

The rule announced in DeSymons v. Minchwick, it appears, has been followed by the courts of New York, but they are not in harmony as to the grounds upon which their own decisions rest.

In Rath v. Palmer, 27 Barb. 652. where assumpit was brought, the court says: " Originally, and particularly in the English courts and in Massachusetts, a distinction was attempted to be established as to the cases in which the plaintiff should be allowed his election, and to confine it to cases where the fraudulent purchaser had parted with the goods, and received money on his sale of the same, which the courts allowed the plaintiff to treat as money had and received to plaintiff's use.

But the cases in our own courts recognize no such distinction. They seem to allow it to be done in all cases where the plaintiff would have been allowed to pursue his remedy in tort, and the decisions in this court have been too numerous and too uniform to allow us now to set up any distinction or limitation even if it were desirable on principle."

From this case, it appears that the rule that where goods have been tortiously obtained, the plaintiff can waive the tort and sue in assumpsit, only in those cases where the defendant has received money for the goods, has no force in that State.

If this be so, the decision can have no weight in a State where the rule is maintained, as it is admitted by the decision to be, in England and Massachusetts.

The rule established by the case is stated by Parker, C. J., in Jones v. Hoar, 5 Pick. 285. " The whole extent of the doctrine as gathered from the books, seems to be that one whose goods have been taken from him or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if the wrong-doer sell the goods and receive the money, waive the tort, affirm the sale and have an action for money had and received for the proceeds. No case can be shown where *assumpsit as for goods sold*, lay in such a case, except it be against the executor of the wrong-doer, the tort being extinguished by the death, and no other remedy but assumpsit against the executor remaining.

That the rule announced in the above case is the law in our State is fully settled by the authorities referred to in support of our first proposition. The reason, then, for the law as declared in the case in Barbour, fails under those authorities. But the grounds of that decision are not tenable even in that State, as will be seen by the case of Wigand v. Sichel, in the Court of Appeals, 3 Keyes, 120, where the court, although sustaining the action of assumpsit, base their opinion upon an entirely different foundation.

" It is not accurate," says the court in that case, " to say that the plaintiffs sought to avoid the contract of sale. It is the credit only that is sought to be avoided.

" It was a sale of goods which the plaintiffs by their action affirmed. It was, however, a sale where the credit was obtained by fraud, and in law amounted to a sale for cash. In stating it in their complaint, therefore, to be a sale for cash, the plaintiffs but stated the contract according to its legal effect. They did not seek to avoid the contract of sale. They endeavored, merely by proof of the act of fraud, to reduce the transaction to a cash basis."

While by the decisions in that State the court felt compelled to allow the action, yet, the adjudication of the common law courts in England and this country, endorsed by such eminent text writers as Story, Chitty and others, pressed upon it with such power, that it was forced to admit that bringing assumpsit affirmed the contract of sale. It was obliged, therefore, in

order to sustain the action, to destroy the entirety of the contract of sale, and to permit the plaintiffs to affirm that portion of the contract fixing the value or price of the goods sold, and to repudiate the credit given on such sale, upon which credit, undoubtedly, such price or value was based.  While entertaining the highest respect for that very able court, we must be allowed to say that in our humble opinion, such doctrine is opposed to the whole current of authorities, and especially in our State, as shown by the cases cited under our second proposition, which is admitted by counsel for appellants to be undoubted law.

The goods were procured by contract, though fraudulent, one of the constituent parts of which was that time should be given for the payment thereof.  With reference to this credit, the amount to be paid for the goods was determined; and we are unable to see how the credit was obtained by fraud, distinct from the other terms of sale, or how the credit can be avoided, and the sale be affirmed, with a different time of payment fixed, without the consent of the purchaser.  If in such case the credit is the only part of the contract resting upon the fraud, and that can be severed from the other terms of sale, then it necessarily follows that the credit is the only portion of the contract that can be repudiated, leaving the contract of sale in full force in other respects; or, as the New York court expresses it, "it becomes a sale for cash."

If, then, the legal effect of the contract, after such disaffirmance, is a sale for cash, the vendee is in no sense a wrong-doer, and the defrauded vendor cannot thus treat him, and re-vest himself with the title to the goods, which we believe is not considered good law anywhere.

With reference to these two cases, then, believing that the grounds upon which they rest are untenable under the law in this State, we feel constrained to dissent from the reasons and conclusions of the court in those cases.

The action of assumpsit is based upon a contract between the parties and a breach thereof by the defendant.  In the bringing of the action, therefore, the plaintiffs admit that at that time there was a contract of some kind for the sale of the

goods existing between the parties, and they seek to recover the value of the goods upon an implied contract to pay upon request, when they show upon the face of their special count, that the only contract between them was one to pay a certain price at a future day. If they rescinded the contract there was no sale, and the goods are still theirs; if they did not rescind, the contract is still in force, and they are therefore bound by its terms. By bringing the action of assumpsit, and attaching the property of the defendant, we are of the opinion that they have thereby created a conclusive presumption of affirmance of the contract of sale upon their part. Butler v. Hildreth, 5 Met. 49.

Upon a disaffirmance of the contract, the remedy by replevin to obtain the possession of the goods, or by trover for their value, with attachment in aid if necessary, was open to the plaintiffs for the assertion of their rights. Such we believe to be the law, according to the decided weight of authority; and while the distinction between the form of the action of trover and assumpsit is so clearly defined in the law, it would be unbecoming in us to make innovations where wiser men than we have shrunk from so doing. We are of the opinion, therefore, that the action was prematurely commenced, and that the demurrer was properly sustained to the special count of the declaration.

We see no error in the record that we can consider under the assignment of errors. The judgment of the court will therefore be affirmed.

Judgment affirmed.