# Chicago Trust & Savings Bank et al. v. Andrew J. Anderson.

1. FRAUD—*When a Party Defrauded Will Not Be Allowed to Rescind.*—A party who has been led into a transaction by means of fraud may elect, if he so chooses, after a full knowledge of the fraud, to affirm the contract, and after such election is once deliberately made, with a full knowledge of the facts, he will not be allowed to shift his position and seek a rescission.

2. CONTRACTS—*What is an Election to Affirm or Rescind.*—The institution of a suit to have a contract enforced is a deliberate choice by the party so seeking to affirm his contract.

3. USURY—*Relief from a Usurious Contract.*—As no redress from a usurious contract is permitted by way of a recovery of money paid as usury, relief, can only be granted to the extent of the application of usurious interest to the extinguishment of the debt.

**Bill for Relief.**—Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the March term, 1900. Affirmed in part and reversed in part. Opinion filed March 5, 1901.

Statement.—This suit was begun by appellee, who filed his bill in chancery against appellants to obtain relief in relation to dealings covering a considerable period of time, and in the course of which appellee became a borrower of money from the appellant bank and a stockholder in the Midland Company, also appellant. The other appellant, D. H. Tolman, was connected with the transactions as the president of the bank and of the Midland Company, and as the moving agency through 'whom appellee was induced to enter into the negotiations in question.

Amendments to the original bill of complaint were made from time to time. The various pleadings which preceded the last amended bill are in part as follows:

The bill of complaint as first exhibited alleged that appellee applied to the appellant bank of which appellant Tolman was president, for a loan of $1,500, and offered good security therefor; that Tolman declined to make the loan unless appellee would first obtain the guaranty of the appellant Midland Company, and to that end appellee was obliged to purchase from Tolman five shares of the capital stock of said Midland Company at the aggregate price of $800; that the par value of said stock was $500; that Tolman represented to appellee that the actual market value of the stock was $160 per share or $800 for the five shares; that in order to procure the loan of the $1,500 appellee was further required to make his promissory note for $500, and he delivered same to Tolman; that appellee thereupon received from the bank the $1,500 borrowed (for which his note was given) less several months' interest upon the same, and less interest for the same number of months upon the $500 note; that interest was computed at eight per cent, and in addition thereto one per cent per month, or twelve per cent per annum, was required for the guaranty of the Midland Company upon the $1,500 note; that there was also deducted from the $1,500 loan $80 as a payment upon the purchase of the Midland Company stock; that appellee received only about $1,340 of the $1,500 supposed to be borrowed; that the $500 note was given in order to enable

Chicago Trust & Savings Bank v. Anderson.

appellee to open an account by deposit of that amount in the appellant bank, which Tolman required as a further condition to the making of the $1,500 loan; that the $500 credited to appellee upon his account with the bank was at once covered by a check for the same amount, which Tolman required appellee to make and deliver to Tolman; that the entire transaction was a scheme and devise of Tolman to obtain from appellee payment of a usurious rate of interest upon his loan of $1,500 and to compel appellee to buy five shares of the stock of the Midland Company; that said stock was in fact worth little or nothing; that by payments upon the notes given and for the guaranty of the Midland Company, and by renewal of notes and payments thereon, appellee has paid to appellants eleven or twelve hundred dollars as interest, more than two-thirds of which was usurious interest, which should be set off against appellee's note of $500 still held by appellants; and that upon an accounting it would be found that appellants were indebted to appellee in a large sum of money, for moneys paid in excess of indebtedness, and that appellee was entitled to the five shares of Midland stock for which he had fully paid. The bill prayed for relief as follows : for an accounting; that appellants be decreed to pay to appellee the moneys paid by him for guaranties by the Midland Company; that the $500 note still held by appellants be ordered canceled and surrendered; that appellee's certificate of the five shares of Midland stock be surrendered and delivered to him; and for an injunction restraining appellants from disposing of the $500 note or the five shares of capital stock of the Midland Company owned by appellee. An injunction as prayed was issued.

Upon answers denying the material allegations of the bill, and replications thereto, a reference was had to a master in chancery, who heard evidence and reported, *inter alia*, that appellee was entitled to the five shares of Midland Company stock as the owner thereof.

After this report a decision by the Superior Court of Cook County, Illinois, in a suit by the People, determined

that the franchise of the Midland Company was forfeited, and judgment of ouster was entered against it.

By subsequent amendment the bill of complaint was so modified that instead of praying for the surrender of the five shares of the stock of the Midland Company to appellee, as the owner thereof, it prayed that the sale of the stock to appellee be decreed to have been a fraudulent sale, and that upon the accounting appellee be credited with the amounts paid upon purchase of the stock with interest. This amendment was made after the report of the master upon the bill as originally framed, recommending, in effect, that appellee be decreed to be the owner of the stock, and after the stock of the Midland Company had been rendered worthless by the decision of the Superior Court in the quo warranto proceeding.

The bill of complaint, with the various amendments thereto, and supplemental allegations, was finally reduced to the form of a last amended bill, referred to in the briefs as the engrossed bill, and upon answers to it and replications, another reference was had to a master in chancery. The master made his final report, finding that complainant was entitled to a rescission of the purchase by him from Tolman of the shares of stock in the Midland Company and to recover the purchase price; also to recover moneys he paid the Midland Company from time to time for guaranteeing his commercial paper; also that he had paid usury upon the indebtedness evidenced by the note held by the bank, and was entitled to credit therefor, and recommending that the complainant be given leave to amend his engrossed bill, and on that being done, the court enter a decree against all the defendants for an entire sum of $1,647.90, made up of the amounts he paid Tolman for the stock, the company for its guaranties, and the bank for usury, less the amount of his note held by the bank.

The amendment suggested by the master's report and subsequently made by the appellee, was an allegation that appellee had "relied entirely upon the statements and representations made by Tolman to him," inducing the purchase of stock, and "never learned of their falsity and

fraudulent character, and of the fraudulent concealments, until a long time thereafter, to wit, immediately and within five years next preceding the filing of the original bill herein as to such matters therein stated, and immediately and within five years next prior to the filing of the amended bill herein as to such matters as are therein stated."

The answers of appellants set forth the filing of the original bill of complaint as showing appellee's knowledge of the facts at that time, and as constituting an estoppel upon him to claim a rescission by his amended bill, and also averred that appellee was guilty of such *laches* as barred the relief prayed by way of a rescission of the contract of purchase of the Midland stock.

The chancellor, upon the coming in of the master's report, and after the amendment last above indicated, entered a decree in effect ordering a rescission of the contract of purchase of the Midland stock; the surrender of the $500 promissory note made by appellee and held by appellants; and a money decree against appellants for $1,647.90, being the aggregate of the moneys paid by appellee to appellants in the course of the transactions, as usurious interest upon the loan, as payments to the Midland Company for its guaranties, and as purchase price of the five shares of Midland stock.

The items as found by the master upon the accounting, and which go to make up the amount of the money decree, are in substance as follows:

Amount paid Tolman on purchase of Midland stock....................................$ 1,168 17

Amount paid Midland Company for its guaranties    794 74

$1,962 91

Amount due to bank from appellee upon $1,500 loan, less usurious excess of interest (not including payments for guaranty by Midland Company)..................................    315 01

Leaving balance found due to appellee......... $1,647 90

From the decree this appeal is prosecuted.

CRATTY, JARVIS & CLEVELAND, attorneys for appellants.

BULKLEY, GRAY & MORE, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

Facts, very like to the facts presented upon this record, were considered by the Supreme Court in Murray v. Tolman, 162 Ill. 416. The decision of the Supreme Court in that case is clearly applicable and controlling in this case upon questions as to a liability of appellants and the propriety of relief. In one respect, however, viz., in the matter of the attempted rescission by appellee of the contract of purchase by which he bought five shares of the Midland Company stock, the case now considered differs from the Murray case. So far as the decree finds upon the evidence that the entire transactions conducted by Tolman on behalf of the bank and the Midland Company were part of one scheme and device, participated in by Tolman, the bank and the Midland Company, to obtain usurious interest from appellee, the facts support such finding, as did the facts in the Murray case; and the decision of the Supreme Court that upon such facts Murray was entitled to relief, is conclusive of the propriety of this decree in like respect. The substance of the decision in the Murray case is that the organization of the Midland Company was a fraudulent device, gotten up by Tolman for an unlawful purpose, and that Murray, who, like appellee, was one of the defrauded borrowers of the bank and investors in Midland Company stock, through inducement of Tolman, was entitled, by reason of the false and fraudulent representations of Tolman, to be relieved of his purchase of stock thus made.

It would unnecessarily extend this opinion to recite all the facts established by the evidence. It is enough to state that the material allegations of the bill of complaint are sustained by the evidence, and that the false and fraudulent representations of Tolman in his dealings with appellee are sufficiently alike to the conduct disclosed in the Murray case to make the latter case controlling here upon the question of appellee's right to relief.

The affirmance of the decree of the Circuit Court, which found that the moneys paid by the victim for interest and for guaranties by the Midland Company were all to be treated as usurious interest, is decisive of the correctness of the decree now reviewed, so far as it allows appellee relief against the usury of his payments of interest to the bank and for guaranties to the Midland Company. In the Murray case it was also held that Murray had not been guilty of *laches*, but had, without unreasonable delay after a discovery of the facts, filed his bill asking for the relief which was ultimately granted. But in the case here, there is an element which was not in the Murray case, and upon which the decision in the Murray case does not bear, viz., the election of the appellee, after a full knowledge of all the facts which constituted the fraud practiced by Tolman, to nevertheless affirm his purchase of the Midland Company stock. By his original bill of complaint, filed February 17, 1892, appellee set up substantially all the facts constituting fraud, and while praying to be relieved of the payment of a usurious rate of interest, yet elected to affirm the purchase of the stock. To this end he sought and obtained preliminary injunction, by which for more than two years the appellants were enjoined from making any disposition of the stock in question. By his prayer for relief he asked in effect that he be decreed to be the owner of the stock and that it be surrendered to him. There was a reference of the cause to a master in chancery, and appellee obtained from the master a report which found these and other allegations of the bill sustained, and which recommended the relief prayed as to a surrender of the five shares of Midland Company stock by appellants to appellee. It was only in May of 1894, after appellee had tied up the five shares of stock for more than two years by the order of injunction which he had obtained, and after a judgment of ouster had been entered against the Midland Company in quo warranto proceedings, that appellee undertook to shift his position and ask for a rescission of the contract which he had up to that time desired to confirm. If it appeared from the evi-

dence that knowledge of facts constituting the fraud had reached appellee after the making of his election to affirm the contract, a different question would be presented. But the only knowledge of importance which appears to have come to appellee between his first choice and the second, is the knowledge that by a judgment of ouster the stock had become wholly worthless. The attempt to shift his position and to elect to rescind the contract was first made more than five years after the transactions were entered into by appellee and Tolman in 1888. In 1888 he declared to Tolman that he was "in his (Tolman's) clutches." In this intervening period appellee has received commissions from the Midland Company for bringing to it other persons who became investors in its stock. In 1892 he joined in another suit, brought in the same month and just prior to the filing of the original bill in this case, by which the ownership of appellee of the shares of Midland stock was asserted and relief asked upon the basis of such ownership. And in the original bill filed herein he asserted that ownership and sought and obtained temporary relief by way of injunction, which continued over a period of more than two years.

These facts constitute an election by appellee, after a full knowledge of the fraud, to affirm the sale, which he might have rescinded, but did not wish to rescind. One who has thus been led into a transaction by means of fraud may, if he choose, after a full knowledge of the fraud, yet elect to affirm the contract, and after such election is once deliberately made, with full knowledge of all the facts, he will not be allowed to shift his position and seek a rescission. Story on Sales (4th Ed.), 558a; Benjamin on Sales (6th Am. Ed.), Sec. 452 *et seq.*; 2 Chitty on Contracts (11th Am. Ed.), p. 1037; 1 Beach Mod. Eq., Sec. 76; 2 Pomeroy Eq. Jur., Sec. 897; Campbell v. Fleming, 1 Ad. & El. 40; Herrington v. Hubbard, 1 Scam. 569; Greenwood v. Fenn, 136 Ill. 146; Brown v. Brown, 142 Ill. 409; Day v. F. S. I. & I. Co., 153 Ill. 293; Brady v. Cole, 164 Ill. 116; Sutter v. Rose, 169 Ill. 66; Kellogg v. Turpin, 2 Ill. App. 55; Daniels v. Smith, 15 Ill. App. 339; Brumbach v. Flower, 20 Ill. App. 219;

Streator v. Coe, 53 Ill. App. 483; Farwell v. Garrett, 88 Ill. App. 182.

In Campbell v. Fleming, *supra*, Littledale, J., said:

" No doubt there was, at the first, a gross fraud on the plaintiff. But after he had learned that an imposition had been practiced on him, he ought to have made his stand. Instead of doing so, he goes on dealing with the shares; and, in fact, disposes of some of them. Supposing him not to have had, at the time, so full a knowledge of the fraud as he afterward obtained, he had given up his right of objection by dealing with the property after he had once discovered that he had been imposed upon."

In Brumbach v. Flower, *supra*, this court held that a defrauded vendor, by bringing assumpsit to recover the price of goods obtained through purchase by fraudulent means, was not precluded from dismissing the assumpsit suit and thereafter maintaining case for deceit in inducing the vendee to make the contract of sale. The Supreme Court held to the same doctrine in the same case upon appeal from a later trial. Flower v. Brumbach, 131 Ill. 646. In that case this court, speaking through Mr. Presiding Justice McAlister, said :

" It is true that by bringing the action of assumpsit, the plaintiff elected to affirm the contract. That probably would preclude him from afterward maintaining trover or replevin for the goods, because either of these actions would be based upon the theory that he had elected to rescind the contract."

The effect of the decisions in the Brumbach case, in this and the Supreme Court, is to hold that assumpsit for purchase price and case for deceit in inducing the sale, are not based upon conflicting positions, as neither is in disaffirmance of the contract.

The instituting of a suit to have the contract enforced, is a deliberate choice of the party so seeking to affirm the contract. Connihan v. Thompson, 111 Mass. 270.

The clear distinction between this case and the Murray case in the matter of the right to a rescission becomes apparent when the language of the decision in that case is noted. In that case Mr. Justice Carter, speaking for the court, said :

"It is, however, among other things, insisted that Murray has been guilty of *laches*, and for that reason is not entitled to relief. We can not so find from the record. There has been no unreasonable delay, after ascertainment of the facts, in filing the bill. It does not appear that the rights of any third party will be prejudiced, nor is it perceived how Tolman is injured by the delay."

This determination bears upon the question of *laches* only, and as applied to facts different from the facts of this case. In the Murray case the bill was filed within a much shorter period after the right to relief was known. Here more than five years intervened between the fraudulently procured purchase and the amendment to the bill by which a rescission was prayed. But the principle which controls here is not so much that appellee has been guilty of *laches*, but that with knowledge of the facts he deliberately affirmed the contract and kept appellants from control of the property by the injunction order for two years before deciding to rescind.

The attempt to elect a rescission must be treated as first made at the time of the amendment of the bill in 1894. It does not relate back in its effect to the filing of the original bill, so far as the question of affirmance or disaffirmance of the contract is concerned. Brown v. Brown, 142 Ill. 409.

We are therefore of opinion that the decree should be affirmed in so far as it affords relief against the usurious interest paid by appellee, and reversed in so far as it decrees a rescission of the contract and a recovery of the amount of the purchase price. As no relief is permitted by way of recovery of money paid as usury, relief can be granted only to the extent of the application of usurious interest to the extinguishment of the debt due from appellee to the bank. Hadden v. Innis, 24 Ill. 381; Tompkins v. Hill, 28 Ill. 519; Perkins v. Conant, 29 Ill. 184; Manny v. Stockton, 34 Ill. 306; Ramsey v. Perley, Id. 504; Pitts v. Cable, 44 Ill. 103; Lake v. Brown, 116 Ill. 83; Mason v. Pierce, 142 Ill. 331.

Treating the payments for guaranties by the Midland Company as usurious interest paid upon the $1,500 loan,

the usurious excess of interest paid, fully extinguishes liability on that loan. In so far as the decree of the Circuit Court orders that the promissory note for $500 made by appellee and held by appellants be surrendered, it is affirmed; and in so far as the decree orders a recovery of $1,647.90 against appellants, it is reversed. The costs in this court to be paid, one-half by appellants and one-half by appellee. Reversed in part and affirmed in part.