Garrett v. John V. Farwell Co.

--------

## Claude B. Garrett v. John V. Farwell Co.

1. REMEDIES—*Election to Pursue One of Two is an Abandonment of the Other.*—When a party chooses between two inconsistent remedies, the election to pursue one involves an abandonment of the other.

2. ELECTION OF REMEDIES—*How Determined.*—Any decisive act by a party with knowledge of his rights determines his election in the case of inconsistent remedies.

3. PRACTICE—*Recalling Instructions.*—Until the verdict of the jury has been announced and recorded in open court, the judge has a right to call all of its instructions upon the merits and withdraw the case from the consideration of the jury.

4. VERDICTS—*When to be Considered as Final and Effective.*—A verdict is not considered valid and final until pronounced and recorded in open court.

Interpleader.—Appeal from the Circuit Court of Cook County; the Hon. RICHARD CLIFFORD, Judge, presiding.  Heard in this court at the October term, 1901.  Affirmed.  Opinion filed April 21, 1902.

PHELPS & CLELAND, attorneys for appellant.

HORACE KENT TENNEY and CHARLES F. HARDING, attorneys for appellee; FRANK H. SCOTT, of counsel.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

This case is here on a second appeal, the first being reported in 88 Ill. App. 182, in which the present appellee was then appellant and the appellant here was then appellee. For a statement of the case we refer to that report. The facts in this record do not differ materially from those appearing on the first appeal, except with reference to the evidence relating to representations made by agents of the Farwell Company, which, it is claimed, induced the action of Garrett in bringing suit in Indiana to recover his land, which was exchanged by him with Day & Co. for a stock of goods in controversy in this suit; also with reference to a chattel mortgage on these goods held by the Farwell Company, and the action of Garrett in the prosecution of the Indiana suit after his interplea in appellee's attachment suit against Day & Co., in which this appeal is prosecuted. The suit in Indiana was based upon a rescission of the contract of exchange of the land for the goods, by reason of the alleged fraud of Day & Co., and because the latter failed to comply with their contract.

On the former appeal we said, among other things:

"We are of opinion that a decided preponderance of the evidence establishes that appellee did elect, at the time of the levy, to abandon claim to the goods, and to rescind the transaction between himself and Day & Co. If this be so, and if this were the only question, then the claim of appellee under his interplea could not be maintained. For it is well established that when one chooses between inconsistent remedies, the election to follow the one involves an abandonment of the other." (Citing cases.)

We then in effect held that if it appeared that the election by Garrett was procured through false and fraudulent representations made by parties representing the Farwell Company, and for the purpose of inducing such election, it would constitute an answer to the claim by the latter that Garrett was bound in this case by his election to abandon his right to the goods. Because the evidence as to the mortgage of the Farwell Company was scant and uncer-

tain, we held that there should be another trial to determine this question of election, and whether it was procured by false and fraudulent representations made by a representative of the Farwell Company.

In this record the proof as to the representations of the agents of the Farwell Company on which it is claimed Garrett, in the first instance, elected to rescind the contract of exchange of the land for the goods and began his suit in Indiana to recover the land, is much more full, and the great weight of the evidence is that neither false nor fraudulent representations as to the mortgage held by the Farwell Company were made to Garrett, and even if it could be said from the whole evidence that there was sufficient to go to the jury upon this point, when the other evidence in the case is considered with reference to the action of Garrett in persisting in the prosecution of the Indiana suit, after he became aware of the full facts regarding the mortgage upon the goods, it seems clear that appellant was not entitled to recover in this case on his interplea, and that the learned trial judge should have directed a verdict in favor of the Farwell Company at the close of the evidence. What was said on the former appeal about a submission of the case to the jury on the question of fraudulent representations and election, does not control in view of the very different case made by the evidence in this record.

From the evidence in this record the following facts in substance appear, to wit: The attachment writ was levied on the afternoon of December 12, 1898; and the sheriff's return shows that the levy was made subject to a certain chattel mortgage in favor of John V. Farwell Co., numbered 2,648,743, and recorded in the recorder's office of Cook County on the 14th day of February, 1898, in book 6440 of records, on page 170. On the same afternoon of the levy Garrett notified the Farwell Company and Day of his election to rescind the contract of exchange and wired his attorneys in Indiana to file a *lis pendens* notice to prevent Day from conveying the land. This notice was filed before the deed of the land to Day was

recorded. On the following day, December 13th, and before the deed was recorded, the Indiana suit to recover the land was begun. That day W. H. Garrett, the father of appellant, who was acting for appellant and caused the Indiana suit to be begun, returned from Indiana to Chicago and went to the office of the Farwell Company's attorney, and was told before going to said office by one Wheeler, who was acting as his attorney, that the mortgage had expired and was no good. Wheeler went with W. H. Garrett to the office of the Farwell Company's attorneys, and Wheeler told Garrett not to tell Coffeen, the attorney of the Farwell Company, that he had started the Indiana suit, and after they left Coffeen's office Wheeler said to Garrett it was much better that he didn't say anything to Coffeen about that suit. On the same evening he consulted his present attorneys, and, acting on their advice, he gave a formal written notice to the Days, which was served upon them the following day, December 14th, by which he demanded a re-conveyance of the Indiana land, offering to surrender and transfer to them his right and title to the goods. This notice states that the goods had been seized by attachment and had also been seized and taken possession of by the mortgagee in a certain chattel mortgage executed by the Days. The next day, December 15th, the interpleader in this case was filed. The following day, December 16th, Garrett filed an amended bill in the Indiana suit, in which was set out in detail the facts constituting the fraud of Day & Co., among others, that they represented the goods to be free of liens and incumbrances, which, it was alleged, was untrue, and that the goods were incumbered by a chattel mortgage given by the Days to the Farwell Company. On January 2, 1899, an affidavit of non-residence was filed in the Indiana suit in order to secure service by publication. Two days later the demurrer of the Days to the bill was overruled, and they were ordered to answer. Five days thereafter the Days answered in the Indiana suit, and alleged therein, among other things, that the said chattel

mortgage had expired and was void and constituted no lien on the goods. The cause was set for trial on January 16th, but by stipulation of Garrett's attorneys was continued to the following March term. On the same day the issues on this interplea were tried in the Circuit Court of Cook County, and Garrett obtained a verdict, which was set aside. On February 24th following, a second trial of the interplea was had in the Circuit Court, on which he obtained judgment. That judgment was reversed upon the first appeal herein. On April 28, 1899, the Indiana case was again called for trial, when Garrett endeavored to procure a continuance of it, and when a continuance was refused him he dismissed the suit without prejudice. By one of the instructions asked by appellant on the last trial of the interplea, he asked the jury to be instructed that he had a right to prosecute the Indiana suit until he ascertained whether the goods would be taken from him on this attachment.

From all this evidence it is established beyond controversy that Garrett knew before he filed his interplea herein of the existence of the mortgage by the Days to the Farwell Company upon the goods in question, and if he did not know the amount due upon the mortgage he could have easily ascertained the same. We think the clear preponderance of the evidence is that he did know that the Farwell Company only claimed $1,500 to be due upon the mortgage. He also knew that the mortgage had expired, having become due some two months prior to the attachment. If he did not know that the mortgage had expired prior to the filing of his interplea, he had notice of it by the answer of the Days filed in the Indiana suit on the 9th of January, 1899. Notwithstanding this knowledge, Garrett persisted in the prosecution of the Indiana case by filing his replication therein on January 12th following, continuing it on January 16th by stipulation, and again on April 28th, in endeavoring to procure a continuance thereof, and finally, when he could not procure such a continuance, in dismissing the suit without prejudice. He thus, after full

knowledge of all the facts with regard to the chattel mortgage held by the Farwell Company, persisted in his election, first made on December 12, 1898, to rescind the contract of exchange and get back his land, because of the fraud of the Days. This course was wholly and absolutely inconsistent with his prosecution of the interplea in this case. Even if he was deceived in any way by any representations of the agents of the Farwell Company, when he became aware of the true facts, as he certainly did on the filing of the answer of the Days in the Indiana suit, he should then have abandoned that case, if he wished to succeed in this one. He not only failed to abandon the Indiana suit, but, as we have seen, has clung to the position, even up to the trial in the Circuit Court in April, 1901, that he had the right to pursue his remedy in that case for a rescission of the contract between him and the Days, while in this case he is insisting that the same contract is in full force. Such is not permissible under the law. (See cases cited on the former appeal, 88 Ill. App. 182.) In one of the cases there cited, Robb v. Vos, 155 U. S. 13–43, the court, in speaking of the doctrine of election, said:

"The rule established by these cases is that any decisive act by a party, with knowledge of his rights and of the facts, determines his election in the case of inconsistent remedies, and that one of the most unequivocal methods of showing ratification of an agent's act is the bringing of an action based upon such act."

In the case of Conrow v. Little, 115 N. Y. 387, the court, in speaking upon the question of affirming or rescinding a contract, say: "They could not do both, and there must be a time when their election should be considered final. * * * By bringing the first action (which was in affirmance of the contract) after knowledge of the fraud practiced by Branscom, the plaintiffs waived the right to disaffirm the contract, and the defendants may justly hold them to their election;" and held that it was not material that the plaintiffs had discontinued the first suit before bringing the case then at bar to trial.

So, in this case, we think it entirely immaterial that the

Indiana suit was dismissed before the last trial of this case. That suit was only dismissed because appellant could not secure its further continuance, and at a time when he well knew all the facts with reference to appellee's mortgage. To like effect in principle with the cases cited are Brown v. Brown, 142 Ill. 409–28; Chicago, etc., Bank v. Anderson, 93 Ill. App. 347–54, and cases cited.

It is further claimed with great earnestness by the counsel of appellant, both in his brief, and oral argument, that the judgment should be reversed, because the learned trial judge, at the close of the evidence, overruled a motion of appellee to direct a finding of the issues in its favor, and thereafter submitted the cause upon instructions given at the instance of appellee, and also of appellant, but before the jury's verdict was received by the court and recorded, of his own motion directed the jury, by a written instruction then given, to find the issues on the interplea in favor of the Farwell Company. If there was any error in this regard, and we are of opinion there was not, it did not prejudice appellant, because, as we have seen, it was the clear duty of the court at the close of the evidence to have taken the case from the jury.

It is true the record shows that the jury came into court from the jury room and handed to the clerk of the court a paper on which was written the following words : " We, the jury, find the issues on the interpleader of Claude B. Garrett in favor of said interpleader, Claude B. Garrett," and this paper was signed by all the jurors and was inspected by the court; but it was not read aloud nor any record made of it, and the court refused to receive it as the verdict, and thereupon gave the instruction to find for the appellee, as above stated.

It is apparent from the record that during the time the jury was out considering the verdict, the judge had changed his mind with reference to the motion to take the case from the jury, and had concluded to grant that motion. Until the verdict of the jury had been announced and recorded in open court, the judge had a perfect right to

recall all its instructions upon the merits and withdraw the case from the consideration of the jury. Martin v. More-lock, 32 Ill. 485; Lambert v. Borden, 10 Ill. App. 648; Good-win v. Appleton, 22 Me. 453; Root v. Sherwood, 6 Johns. 69.

In the Martin case, *supra*, the court say : " A verdict is not considered valid and final until pronounced and recorded in open court."

In the Root case, *supra*, it is said :

" There is no verdict of any force but a public verdict, given openly in court. Until it is received and recorded it was no verdict and the jury had the right to alter it as they may a private verdict."

To the same effect are the other cases cited.

In this case the verdict had not been announced in open court nor had it been recorded. The court refused to receive it and have it recorded. It was still subject to the control of the jury, and the case was certainly within the control of the court. We think there was no error at this stage of the case in the court's action.

Even if the proceeding can be said to be irregular, still we regard the judgment in the case as right upon the whole record, and that being so, the ruling of the court was without prejudice to the appellant. Heckle v. Grewe, 125 Ill. 56–63; Jemison v. Chicago, C. C. Co., 64 Ill. App. 436; Crown C. & T. Co. v. Taylor, 184 Ill. 250–4; City of Chicago v. Jackson, 88 Ill. App. 131–6, and cases cited.

The judgment is affirmed.